No. 25-_____

# In the United States Court of Appeals for the Fifth Circuit

———————————————————————

IN RE CASSAVA SCIENCES, INC. SECURITIES LITIGATION

———————————————————————

On Petition for Permission to Appeal from the United States District
Court for the Western District of Texas, Austin Division,
Case No. 1:21-cv-00751-DAE

———————————————————————

**DEFENDANTS' PETITION FOR PERMISSION TO APPEAL
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F)**

———————————————————————

Douglas W. Greene
Zachary R. Taylor
C. Shawn Cleveland
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 847-7090
*dgreene@bakerlaw.com*
*ztaylor@bakerlaw.com*
*scleveland@bakerlaw.com*

COUNSEL FOR PETITIONERS REMI
BARBIER AND LINDSAY BURNS

Gregg Costa
  *Counsel of Record*
Monica K. Loseman
Scott Campbell
Brian Richman
Lloyd S. Marshall
GIBSON, DUNN & CRUTCHER LLP
811 Main St., Suite 3000
Houston, TX 77002
Telephone: (346) 718-6600
*gcosta@gibsondunn.com*
*mloseman@gibsondunn.com*
*scampbell@gibsondunn.com*
*brichman@gibsondunn.com*
*lmarshall@gibsondunn.com*

COUNSEL FOR PETITIONERS CASSAVA
SCIENCES, INC. AND ERIC. J. SCHOEN

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons or entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs-Respondents and Class | Counsel for Plaintiffs-Respondents and Class |
|---|---|
| Mohammad Bozorgi<br><br>Ken Calderone<br><br>Manohar K. Rao<br><br>All persons or entities who, between September 14, 2020 and October 12, 2023, purchased or otherwise acquired Cassava Sciences, Inc. securities | ROBBINS GELLER RUDMAN & DOWD LLP<br>Daniel S. Drosman<br>Jessica T. Shinnefield<br>Kevin A. Lavelle<br>Heather G. Geiger<br>Jeremy W. Daniels<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: (619) 231-1058<br><br>KENDALL LAW GROUP, PLLC<br>Joe Kendall<br>3811 Turtle Creek Blvd., Suite 825<br>Dallas, TX 75219<br>Telephone: (214) 744-3000<br><br>GLANCY PRONGAY & MURRAY LLP<br>Charles H. Linehan<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>Telephone: (310) 201-9150 |

| Defendants-Petitioners | Counsel for Defendants-Petitioners |
|---|---|
| Cassava Sciences, Inc.<br><br>Eric J. Schoen<br><br>Remi Barbier<br><br>Lindsay Burns | GIBSON, DUNN & CRUTCHER LLP<br>Gregg Costa<br>Lloyd S. Marshall<br>811 Main St., Suite 3000<br>Houston, TX 77002<br>Telephone: (346) 718-6600<br><br>Monica K. Loseman<br>Scott Campbell<br>1801 California St.<br>Denver, CO 80202<br>Telephone: (303) 298-5700<br><br>Brian Richman<br>2001 Ross Avenue, Suite 2001<br>Dallas, TX 75201<br>Telephone: (314) 698-3100<br><br>BAKER & HOSTETLER LLP<br>Douglas W. Greene<br>Zachary R. Taylor<br>45 Rockefeller Plaza<br>New York, NY 10111<br>Telephone: (212) 847-7090<br><br>C. Shawn Cleveland<br>2850 N. Harwood St., Suite 1100<br>Dallas, TX 75201<br>Telephone: (214) 210-1210 |

Respectfully submitted,

 s/ Gregg Costa
Gregg Costa
*Counsel of Record*

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................ 1

JURISDICTIONAL STATEMENT ............................................ 4

QUESTIONS PRESENTED .................................................... 4

FACTUAL BACKGROUND...................................................... 5

    A.    Cassava Attempts to Develop Simufilam to Treat Alzheimer's Disease. ............................................... 5

    B.    Cassava Becomes a Meme Stock. ......................... 6

    C.    Cassava's Stock Experiences Massive Price Swings Untethered from News............................. 6

    D.    A Citizen Petition Triggers Investigations and Litigation. ........................................................... 8

PROCEDURAL BACKGROUND............................................. 9

    A.    Plaintiffs Rely on a Presumption of Reliance Without Addressing Market Realities. ............... 9

    B.    Defendants Challenge Market Efficiency, Damages, and Price Impact. ................................ 11

    C.    The District Court Restricts Defendants' Ability to Respond to New Evidence..................... 12

    D.    The District Court Certifies the Class.................. 13

STANDARD FOR GRANTING REVIEW .............................. 15

RELIEF SOUGHT.................................................................. 16

ARGUMENT .......................................................................... 16

I.    The District Court Erred by Ignoring the Meme Stock Dynamics that Plagued Cassava's Stock During the Class Period.................................................................. 17

    A.    The District Court Misconstrued the Market Efficiency Inquiry................................................ 18

**TABLE OF CONTENTS**
**(CONTINUED)**

    B.    The District Court's Approach Led It to Ignore Critical Evidence, Including the Many Massive Movements in Cassava's Price in the Absence of News. ........................... 20

II.    The District Court Erred in Concluding that Classwide Damages Could Reliably Be Calculated in a Manner Consistent with Plaintiffs' Theory of Liability. ........................... 22

III.    The District Court Committed Serious Procedural Errors in Issuing Its Class Certification Decision. ..................................... 25

CONCLUSION ........................................................................... 28

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ................................................................. 19

*In re Anadarko Petroleum Corp. Sec. Litig.*,
Case No. 4:20-cv-00576 (S.D. Tex.) ...................................... 26

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).......................................... 1, 4, 10, 16, 19, 22

*Bd. of Trs. of Ft. Lauderdale Gen. Emples. Ret. Sys. v. Oao*,
811 F. Supp. 2d 853 (S.D.N.Y. 2011)...................................... 27

*Bell v. Ascendant Sols., Inc.*,
422 F.3d 307 (5th Cir. 2005).................................................. 17

*In re BP p.l.c. Sec. Litig.*,
2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) .......................... 23

*Bratya SPRL v. Bed Bath & Beyond Corp.*,
752 F. Supp. 3d 34 (D.D.C. 2024) .............................. 2, 18, 22

*Cammer v. Bloom*,
711 F. Supp 1264 (D.N.J. 1989)....................................... 4, 19

*Camper v. Calumet Petrochemicals, Inc.*,
584 F.2d 70 (5th Cir. 1978).............................................27, 28

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)............................................. 4, 22, 23, 27

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
99 F.4th 770 (5th Cir. 2024) ............................. 4, 25, 26, 28

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
594 U.S. 113 (2021)................................................................. 27

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)................................................................. 16

*KB Partners I, L.P. v. Barbier*,
2013 WL 2443217 (W.D. Tex. June 4, 2013) ........................ 28

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001)................................. 4, 19, 20

# TABLE OF AUTHORITIES
## (CONTINUED)

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161 (2d Cir. 2005) ............................................................ 27

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
    2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013), *aff'd*, 783 F.3d
    383 (2d Cir. 2015) .......................................................................... 26

*Merrill v. S. Methodist Univ.*,
    806 F.2d 600 (5th Cir. 1986) .......................................................... 27

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
    2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ................................ 23

*Regents v. Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*,
    482 F.3d 372 (5th Cir. 2007) .......................................................... 15

*Residents of Gordon Plaza, Inc. v. Cantrell*,
    25 F.4th 288 (5th Cir. 2022) .......................................................... 26

*Sicav v. Wang*,
    2015 WL 268855 (S.D.N.Y. Jan. 21, 2015) .................................... 25

*Unger v. Amedisys, Inc.*,
    401 F.3d 316 (5th Cir. 2005) ..................................................... 17, 19

*In re Vale S.A. Sec. Litig.*,
    2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) .................................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................ 17

## Statutes

15 U.S.C. § 78aa ........................................................................................ 4

28 U.S.C. § 1292 ........................................................................................ 4

28 U.S.C. § 1331 ........................................................................................ 4

## Rules

Fed. R. Civ. P. 23 .................................................. 1, 3, 4, 5, 15, 16, 20

Pursuant to Rule 23(f), Cassava Sciences, Inc., Eric J. Schoen, Remi Barbier, and Lindsay Burns petition for permission to appeal the order certifying a class of "[a]ll purchasers or acquirers of Cassava common stock or call options on Cassava common [stock] or sellers of put options on Cassava common stock…between September 14, 2020 and October 12, 2023, inclusive." App.1958.

## INTRODUCTION

This case presents a critical and novel question at the intersection of securities law and modern market behavior: Can a court presume classwide reliance under *Basic Inc. v. Levinson*, <u>485 U.S. 224</u> (1988), for a stock whose price was driven not by value-relevant information, but by viral social media activity and meme stock dynamics?

Under *Basic*, courts may presume that in buying or selling a security, investors relied on the integrity of the market price—that is, they assumed the price reflected all publicly available information, including any misstatements or omissions. This presumption allows plaintiffs to avoid proving that each investor actually read and relied on the alleged misstatements, and thus often is essential to satisfying Rule 23's predominance requirement in securities class actions. But the

presumption is not automatic—it depends on whether the market for the security was actually efficient.

The district court answered yes—certifying a class based on a checklist of judicially crafted market-efficiency factors while disregarding overwhelming evidence that Cassava's stock traded in a market divorced from informational efficiency. In doing so, the court treated meme stock volatility as legally irrelevant, failed to engage with expert evidence, and refused to allow defendants to respond to new evidence and disclosures introduced late in the briefing. The court also created a split among federal district courts on issues yet to be considered by any circuit court. *See Bratya SPRL v. Bed Bath & Beyond Corp.*, 752 F. Supp. 3d 34 (D.D.C. 2024) (denying class certification due to meme stock dynamics' impact on stock).

This is not a routine securities case. Cassava was one of the most volatile stocks in the Russell 2000 during the class period, with price swings of over 100% in a single day, often untethered to any news or disclosures. Analysts, media outlets, and market participants repeatedly described Cassava as a "meme stock," with price changes driven by retail enthusiasm on platforms like Reddit and Twitter rather than by

fundamentals. Yet the district court certified a class without addressing whether such dynamics undermine the presumption of reliance—a question that goes to the heart of Rule 23's predominance requirement and the integrity of securities class actions.

The implications of the district court's approach are sweeping. If left uncorrected, it would mean that any stock actively traded on a major exchange—regardless of how irrationally it behaves—automatically qualifies as "efficient" for purposes of classwide reliance. That would convert *Basic*'s presumption into a blanket rule, eroding the rigorous analysis required under Supreme Court precedent and expanding the reach of securities class actions far beyond what Rule 23 permits.

Interlocutory review is warranted to correct these errors and clarify the limits of the *Basic* presumption in the era of meme stocks. The petition raises a novel and recurring issue of law, and the certification order—if allowed to stand—will exert settlement pressure untethered to the merits, given the scale of alleged damages and the cost of defending a class action through trial.

## JURISDICTIONAL STATEMENT

The district court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa. The certification order was entered on August 12, 2025, and the petition was timely filed within fourteen days. This Court has jurisdiction under 28 U.S.C. § 1292(e) and Rule 23(f).

## QUESTIONS PRESENTED

1.    Whether a market that satisfies the factors described in *Cammer v. Bloom*, 711 F. Supp 1264 (D.N.J. 1989) and *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001) is always "efficient" under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), regardless of the market's actual behavior.

2.    Whether the district court erred in determining that damages could reliably be calculated on a classwide basis under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), where the relevant market underwent massive price swings in the absence of new information.

3.    Whether the district court provided Defendants an "adequate opportunity to respond," *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 773-74 (5th Cir. 2024), to new evidence submitted with Plaintiffs' reply.

4.    Whether the district court erred by refusing to allow the parties to address newly alleged corrective disclosures' impact on class certification.

## FACTUAL BACKGROUND

This case is about whether Cassava's stock traded in an efficient market during the class period—such that investors can be presumed to have relied on the integrity of its price when buying or selling securities. That question turns on how Cassava's stock actually behaved. The market for Cassava securities was marked by extreme volatility, driven not by company disclosures or value-relevant news, but by viral social media activity and speculative trading. Understanding that dynamic is essential to determining whether the fraud-on-the-market presumption applies and whether class certification was appropriate under Rule 23.

### A.    Cassava Attempts to Develop Simufilam to Treat Alzheimer's Disease.

Cassava is a clinical-stage biopharmaceutical company focused on developing simufilam, a potential treatment for Alzheimer's disease and other neurological disorders. After the FDA accepted Cassava's Investigational New Drug submission for simufilam in 2017, the company proceeded with Phase 1 and Phase 2 clinical trials.

**B.  Cassava Becomes a Meme Stock.**

Beginning in early 2021, Cassava stock became engulfed in the "meme stock" phenomenon—a market dynamic characterized by intense retail investor enthusiasm on platforms like Reddit and Twitter, often resulting in dramatic price swings untethered from company fundamentals.  App.726-28, 741-48.  Cassava was widely recognized as a leading meme stock during the class period.  App.742-48   Market analysts, financial media, and professional observers repeatedly described Cassava as a "meme stock," attributing wild volatility to retail-driven speculation.  App.744.  Cassava was included in the Solactive Roundhill Meme Stock Index, and its ticker was among the most frequently mentioned on WallStreetBets, a 10-million-member online forum known for fueling meme stock surges.  App.745-47.  In the first half of 2021, only GameStop and AMC—two paradigmatic meme stocks—posted greater gains in the Russell 2000.  App.744.

**C.  Cassava's Stock Experiences Massive Price Swings Untethered from News.**

Throughout this period, Cassava's stock price experienced dramatic swings untethered from any value-relevant news.  On December 31, 2020, the stock price closed at $6.82 per share.  By February 1, 2021, it

had nearly quadrupled to $23, despite no new value-relevant disclosures. The next day, Cassava released interim results from a Phase 2 open-label study. App.1204-05. Although the study lacked a control group, involved a small sample size, and covered a short timeframe, Cassava's stock ticker began appearing *1,600 times per day* on Reddit and Twitter. App.845-46.

Virtually no value-relevant news about Cassava was released between February 2 and July 28, 2021. App.458-60. Cassava's price nonetheless continued to whipsaw. From February 3 to 5, the price surged from $60 to $117 before collapsing to $45—all without new information. The stock then bounced between $32 and $62 through May, then tripled from about $37 to $103 between May 13 and July 13, only to fall back to $80 and then spike again to $135 by July 28. This zigging and zagging occurred during a time when Plaintiffs' expert found that no statistically significant movements in the stock could be attributed to value-relevant news about Cassava. App.458-60. Instead, the swings were attributed to retail trading and social media activity. App.749-56.

On July 29, 2021, Cassava released additional Phase 2 data that market analysts described as "positive" and "better than expected."

App.1042-57.  Yet the stock plummeted—closing at $103 that day and falling to $69 the next, a drop of more than 50% from the prior intraday high.  App.758-59.

### D.    A Citizen Petition Triggers Investigations and Litigation.

Amid this volatility, short-sellers filed a Citizen Petition with the FDA alleging anomalies in Cassava's scientific data.  Plaintiffs filed this action shortly thereafter, relying on the Citizen Petition's allegations. The FDA denied the Citizen Petition in February 2022.

Around the same time, the DOJ and the SEC initiated investigations into Cassava.   On September 26, 2024, Cassava announced a settlement with the SEC resolving negligence-based disclosure charges that resolved the SEC's investigation of the company. The same day, Cassava also stated it did not anticipate DOJ bringing charges against or seeking a resolution with the company.

Cassava announced initial top-line results from its phase 3 trials of simufilam on November 25, 2024, which indicated the trials failed to show a statistically significant treatment benefit to Alzheimer's patients in cognition and the activities of daily living.  Due to these disappointing results, Cassava discontinued efforts to develop simufilam for

Alzheimer's disease and pivoted to exploring other applications. On February 27, 2025, Cassava announced an agreement with Yale University to license simufilam as a potential treatment for seizures related to certain neurodevelopment disorders, including tuberous sclerosis complex. Preclinical studies of this new application are ongoing, with the first clinical study expected to begin in the first half of 2026.

## PROCEDURAL BACKGROUND

The procedural history of this case underscores why interlocutory review is warranted. At every stage, the district court treated the presumption of reliance as a foregone conclusion—certifying a class without engaging with the market realities that undermine efficiency, and without allowing Defendants a meaningful opportunity to respond to new expert evidence. The sequence of briefing, evidentiary rulings, and the court's adoption of the certification order reveals a pattern of procedural shortcuts that compounded the substantive errors.

### A.    Plaintiffs Rely on a Presumption of Reliance Without Addressing Market Realities.

Plaintiffs filed their motion for class certification on March 13, 2024, supported by an expert report from Dr. Steven Feinstein. App.1-28, 215-79. Their theory of liability rests on the fraud-on-the-market

doctrine, which allows securities plaintiffs to invoke a presumption of reliance under *Basic Inc. v. Levinson*, <u>485 U.S. 224</u> (1988), if the security traded in an efficient market. That presumption allows plaintiffs to avoid proving that each individual investor actually read and relied on the alleged misstatements. Instead, it assumes that investors relied on the integrity of the market price—which, in an efficient market, is presumed to reflect all publicly available material information, including any misrepresentations. Reliance is a core element of a Rule 10b-5 claim, and classwide reliance is essential to satisfying Rule 23(b)(3)'s predominance requirement. Without it, individualized inquiries into each investor's decision-making would overwhelm common issues and defeat certification.

To establish market efficiency, Plaintiffs and Dr. Feinstein relied exclusively on a checklist of the *Cammer*/*Krogman* factors—judicially developed indicators such as trading volume, analyst coverage, and bid-ask spread. App.1-28, 215-79. But they failed to address the defining feature of this case: The meme stock phenomenon's impact on Cassava's stock. Throughout the class period, Cassava's stock exhibited extreme volatility untethered from any value-relevant news, driven instead by

10

viral social media activity and retail speculation.  App.741-48.  Plaintiffs ignored this dynamic entirely, failing to mention the massive price swings that occurred in the absence of news or the role of platforms like Reddit and Twitter in fueling Cassava's trading.  App.1-28, 215-79.

On damages, Plaintiffs offered only a vague commitment to use the "out of pocket" method, which estimates the difference between the price paid and the price that would have prevailed absent the alleged fraud. App.274-78.  Dr. Feinstein described his "methodology" as using "all tools available" to assess what the stock price would have been without misrepresentations or omissions, App.822-83, but he did not identify those tools, apply them to the facts, or explain how his approach could account for the unusual market dynamics at play, App.274-78.

## B.    Defendants Challenge Market Efficiency, Damages, and Price Impact.

Defendants filed their opposition on June 28, 2024, supported by an expert report from Dr. Rene Stulz.  App.664-710, 717-808.  Dr. Stulz explained that Cassava's price movements were inconsistent with market efficiency, as many swings occurred without any new information and were instead correlated with social media activity.  App.749-58.  He also criticized Dr. Feinstein's damages model as disconnected from

Plaintiffs' theory of liability and incapable of isolating losses attributable to the alleged fraud.  App.790-808.  Dr. Stulz further noted that most of the "corrective disclosures" identified by Plaintiffs were not associated with statistically significant price declines, undercutting any presumption of price impact.  App.782-90.  Anticipating that Plaintiffs would submit additional expert reports, Defendants stated their intent to file a *Daubert* motion challenging Dr. Feinstein's methodology.  App.686.

### C.    The District Court Restricts Defendants' Ability to Respond to New Evidence.

On August 23, 2024, Plaintiffs filed their reply, accompanied by a 110-age rebuttal report from Dr. Feinstein—nearly double the length of his initial submission. App.1207-53, 1360-1473.  For the first time, Dr. Feinstein attempted to address meme stock dynamics.  App.1360-1473.  Plaintiffs also indicated they would file a *Daubert* motion in response to any further report from Dr. Stulz.  App.1228.

Defendants promptly sought leave to file a surreply, explaining that they were entitled to respond to the extensive new evidence raised in Plaintiffs' reply.  App.1582-85, 1601-08.  The Magistrate Judge granted leave to file a surreply but prohibited the submission of any new evidence.

12

App.1609-12.   At that point, Dr. Stulz had already prepared a draft surreply report.

Defendants filed their surreply on October 4, 2024.  App.1613-40. Defendants also requested an evidentiary hearing, attaching Dr. Stulz's report to inform the Court's decision about whether to hold a hearing. App.1641-44. Plaintiffs did not oppose the request for a hearing, App.1647, but moved to strike Dr. Stulz's surreply report or, in the alternative, to admit a further report from Dr. Feinstein, App.1666-72. On October 24, the Magistrate Judge stuck Dr. Stulz's report in its entirety, citing her prior order.  App.1680-82.

### D.    The District Court Certifies the Class.

On November 13, Plaintiffs moved for leave to file a Second Supplemented Complaint, seeking to add new "corrective disclosures" that occurred after the close of the proposed class period.  App.1683-1708. Defendants opposed the motion, explaining that these new disclosures raised fresh issues that would require reopening class certification briefing.  App.1745-61.

Nonetheless, on November 15, the Magistrate Judge issued a Report and Recommendation recommending that class certification be

granted and denying Defendants' request for an evidentiary hearing. App.1709-44.  Although both parties had indicated their intent to file *Daubert* motions, App.686, 1228, the Report and Recommendation was issued before those motions were filed.  Defendants filed their *Daubert* motion on November 27 and timely objected to the Report and Recommendation on November 29.  App.1763-88.  Plaintiffs moved to strike the *Daubert* motion on December 11.  App.1806-13.

On February 25, 2025, the district court denied Plaintiffs' motion for class certification without prejudice, citing the pending motion to amend the complaint and the unresolved motion to strike.  App.1859-61. On May 21, the court granted both motions and instructed Plaintiffs to "refile their Motion for Class Certification within 30 days."  App.1862-74. The court directed that the new filing "shall solely be to incorporate the existing class certification briefing" and that "[n]o new arguments, evidence, or nonexisting briefing shall be filed by any parties."  App.1874.

Plaintiffs filed their Second Supplemented Complaint on May 22. On June 20, Plaintiffs filed their renewed motion for class certification, which is a copy of their original March 2024 motion.  App.1875-1904.

Defendants filed a short opposition on July 2, incorporating all prior filings by reference.  App.1905-06.

On August 12, 2025, the district court granted Plaintiffs' renewed motion for class certification, fully adopting the Magistrate Judge's Report and Recommendation.  App.1908-58.

## STANDARD FOR GRANTING REVIEW

"[I]t is appropriate to grant leave to appeal an adverse determination [of class certification under Rule 23(f)] where (1) a certification decision turns on a novel or unsettled question of law or (2) an order granting certification…may force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability." *Regents v. Univ. of Cal. v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 379 (5th Cir. 2007) (internal quotation marks omitted). This Court possesses "unfettered discretion whether to permit the appeal." Fed. R. Civ. P. 23(f) advisory committee note.

## RELIEF SOUGHT

The Court should grant interlocutory review under Rule 23(f) and, following briefing on the merits, reverse or vacate the district court's certification order.

## ARGUMENT

The district court's certification order rests on a fundamentally flawed premise: That Cassava's stock traded in an efficient market during the class period, despite overwhelming evidence to the contrary. Plaintiffs' theory of liability depends on the fraud-on-the-market doctrine, which presumes that investors relied on the integrity of the market price when purchasing Cassava securities. But that presumption is only available if the market was efficient—meaning that the stock price reflected all publicly available, value-relevant information. *Basic*, 485 U.S. at 242-46; *see Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278, 283 (2014). Here, the record shows that Cassava's stock was driven by meme stock dynamics, with price movements untethered from disclosures or fundamentals. By disregarding this evidence and mechanically applying the *Cammer/Krogman* factors, the district court failed to conduct the rigorous analysis required under Rule 23 and

Supreme Court precedent.  That error infected the court's predominance finding and warrants interlocutory review.

## I.    The District Court Erred by Ignoring the Meme Stock Dynamics that Plagued Cassava's Stock During the Class Period.

When "considering the certification of securities class actions dependent on the 'fraud on the market' theory" articulated in *Basic*, "a careful certification inquiry is required and findings must be made based on adequate admissible evidence to justify class certification." *Bell v. Ascendant Sols., Inc.*, 422 F.3d 307, 312-13 (5th Cir. 2005) (quoting *Unger v. Amedisys, Inc.*, 401 F.3d 316, 319 (5th Cir. 2005)).  "Because this inquiry can prove decisive for class certification," courts must apply a "rigorous" standard when evaluating proffered proof of efficiency.  *Unger*, 401 F.3d at 322; *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351-52 (2011).

The district court failed to meet that standard.  In crediting Plaintiffs' rinse-and-repeat recitation of the *Cammer/Krogman* factors, the district court failed to engage in any meaningful analysis of the market dynamics that bore on Cassava's stock during the class period.  Instead, the district court dismissed those dynamics as irrelevant, failing

to grapple with the many ways that Cassava's stock departed from the workings of an efficient market. App.1937-52.

## A. The District Court Misconstrued the Market Efficiency Inquiry.

The district court found "Defendants' meme stock argument to be legally and factually inaccurate" because "Defendants identify no Fifth Circuit case law stating that courts should not apply the *Cammer/Krogman* factors in securities fraud cases when the defendant argues that the stock was a meme stock or that the market was inefficient." App.1937.

That conclusion is flawed. The meme stock phenomenon is a recent development, so it is unsurprising that the Fifth Circuit has not yet addressed it. But other courts have begun to recognize its implications. In *Bratya SPRL v. Bed Bath & Beyond Corp.*, the district court denied class certification based on the distorting effects of meme stock dynamics. 2024 WL 4332616, at *12-19.

More fundamentally, Defendants did not argue that the *Cammer/Krogman* factors should be disregarded. Rather, Defendants argued that Plaintiffs' cookie-cutter listing of these factors was insufficient given the market forces at play. As this Court has made

18

clear, the *Cammer/Krogman* factors are an "analytical tool," not a "checklist." *Unger*, 401 F.3d at 325. They are useful only to the extent they illuminate the ultimate question—whether it is "reasonable to presume" that class members relied "on the integrity of the price set by the market" during the class period. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 463 (2013) (quoting *Basic*, 485 U.S. at 245).

Rather than consider the *Cammer/Krogman* factors as part of that broader inquiry, the district court treated the factors as a checklist that *guarantees* market efficiency in *every* context. App.1937-52. But context matters. Even Dr. Eugene Fama, whose work underpins the fraud-on-the-market theory, has acknowledged that meme stocks behave inconsistently with market efficiency. App.742-43, 1105-10.

That insight is critical. GameStop, AMC, and other meme stocks satisfy every *Cammer/Krogman* factor. They have substantial market capitalization, high trading volumes, extensive analyst and media coverage, S-3 eligibility, narrow bid-ask spreads, and significant float. *See Cammer*, 711 F. Supp at 1266-68; *Krogman*, 202 F.R.D. at 468-70 (describing the factors). Yet their price movements were driven by viral social media campaigns, not value-relevant information.

19

Under the district court's approach, even these stocks would be deemed efficient at the height of their speculative frenzy. Indeed, the district court's approach means that the markets for *all* stocks actively traded on any major exchange are *always* efficient. Such an approach is incompatible with the rigorous analysis required by Rule 23, undermines the requirement of classwide reliance, and vastly expands the scope of securities class actions.

### B.    The District Court's Approach Led It to Ignore Critical Evidence, Including the Many Massive Movements in Cassava's Price in the Absence of News.

The district court's mechanical application of the *Cammer/Krogman* factors caused it to ignore swaths of evidence showing Cassava's stock did not trade in an efficient market. Cassava's stock demonstrated enormous volatility during the class period, often in the absence of any material news. App.749-59, 804. Analysts and media consistently attributed these swings to retail meme-stock traders. App.741-48. Yet the district court failed to address *any* of the massive movements in Cassava's stock that occurred in the absence of news. App.1937-52.; *cf. Krogman*, 202 F.R.D. at 477 (holding that there was "no efficient market where price movements were random and volatile").

The district court also dismissed Dr. Stulz's expert analysis, asserting that he "admitted that he has no evidence Cassava was a meme stock." App.1938-39.  That is incorrect.  Dr. Stulz explained that while there is no single academic definition of "meme stock," the phenomenon has been widely studied and is understood to disrupt market efficiency. App.741-43.  He examined Cassava's trading behavior and concluded that it exhibited hallmark features of meme stock dynamics.  App.741-48, 752-59.

For example, Dr. Stulz explained how many swings in Cassava's stock price during the class period are better explained by social media activity than by the publication of any value-relevant news.  App.749-59, 774-75.  Dr. Stulz identified 34 days during the class period that Dr. Feinstein characterized as "non- or lesser-news days," but on which Cassava received extremely high levels of social-media attention. App.749-59.  Applying Dr. Feinstein's own significance metric, the rate of statistically significant price changes on these no-news dates was "indistinguishable" from the "news" dates Dr. Feinstein identifies. App.749-53, 774-75.  The district court ignored this.

Ultimately, the question is not whether Cassava fits some technical definition of "meme stock."  The question is whether the market for Cassava's stock operated efficiently.  Defendants and Dr. Stulz identified numerous consequences of the meme stock phenomenon on Cassava's stock during the class period, consequences which undermined "the integrity of the price set by the market." *Basic*, <u>485 U.S. at 245</u>.  As the *Bratya* court recognized, "the Court cannot simply ignore these dynamics…in determining whether [the] market was efficient." <u>2024 WL 4332616</u>, at *14.  By categorically dismissing Defendants' meme-stock-related evidence, however, the district court did just that.[1]

## II.    The District Court Erred in Concluding that Classwide Damages Could Reliably Be Calculated in a Manner Consistent with Plaintiffs' Theory of Liability.

The district court further erred in concluding that Plaintiffs had demonstrated a reliable method for calculating damages on a classwide basis, as required under *Comcast Corp. v. Behrend*, <u>569 U.S. 27</u> (2013).  *See* App.1953-56.  *Comcast* demands that plaintiffs present a damages

---

[1]  The district court also failed to engage with other market realities, including severe short-selling constraints during the class period, analysts' difficulty in assessing information about the company, and the radical differences between different Cassava options.  App.1935-52.

model capable of measuring "only those damages attributable to [their] theory" of liability. 569 U.S. at 35. Accordingly, courts applying *Comcast* have rigorously scrutinized proposed methodologies for disconnects between damages and liability. *See In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *17 (S.D. Tex. Dec. 6, 2013) (collecting cases). "Plaintiffs cannot avoid this hard look by refusing to provide the specifics of their proposed methodology" at the class certification stage. *Id.* Yet that precisely is what the district court allowed Plaintiffs to do.

Plaintiffs' promise to calculate "out-of-pocket" damages rests on vague references to unspecified "tools" and generalized valuation techniques, without any explanation of how those tools would be applied to the facts of this case. App.274-78. As one court put it in excluding similar testimony from Dr. Feinstein, such an approach is "vague, indefinite, and unspecific," and "amounts to no damages model at all." *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018). Here, the only case-specific statement in Dr. Feinstein's damages opinion is a conclusory assertion that his methodology is "consistent" with Plaintiffs' theory of liability. App.274-78. That is plainly insufficient under *Comcast*.

Plaintiffs' theory of liability is that Defendants misrepresented highly technical details in disclosures of preclinical and clinical research during the early stages of simufilam's development. But measuring damages attributable solely to that theory is particularly challenging given the market forces at play. Cassava's stock was subject to extreme volatility throughout the class period, much of it driven by meme stock dynamics and retail speculation. App.726-28, 741-48. Given those dynamics, Plaintiffs have not shown that residual price declines on alleged corrective disclosure dates reliably can be used to isolate the impact of the alleged misrepresentations. App.730, 798-805.

Dr. Feinstein did not address these challenges. He offered only a boilerplate summary of generic valuation tools, without specifying which tools he would use, how they would be applied, or how they would account for the unique market behavior of Cassava's stock. App.274-78, 1454-71. Plaintiffs supplied *no information whatsoever* that would allow the court to assess whether Dr. Feinstein's "methodology" could be implemented at a later stage. App.1454-71. *Comcast* requires more than vague assurances—it requires a demonstrable, case-specific model tied to the theory of liability.

Courts have repeatedly rejected similar opinions from Dr. Feinstein as "black box-like, unverifiable, standardless, and subjective." *In re Vale S.A. Sec. Litig.*, 2022 WL 122593, at *12 (E.D.N.Y. Jan. 11, 2022), *report and recommendation adopted*, 2022 WL 969724 (E.D.N.Y. Mar. 31, 2022); *see also Sicav v. Wang*, 2015 WL 268855, at *6 (S.D.N.Y. Jan. 21, 2015) (same). Yet the district court accepted Plaintiffs' barebones approach and found that they had satisfied their burden under *Comcast*. This too was error.[2]

## III. The District Court Committed Serious Procedural Errors in Issuing Its Class Certification Decision.

The district court's certification order is marred by multiple procedural errors that independently warrant reversal. Chief among them was the court's refusal to consider Dr. Stulz's surreply report, which responded to entirely new expert opinions introduced in Plaintiffs' reply. That refusal directly contravenes this Court's precedent.

In *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770 (5th Cir. 2024), the defendants sought leave to file a

---

[2] If this Court grants review, Cassava also expects to address other substantive errors in the certification order, including the district court's finding that Defendants failed to demonstrate a lack of price impact. App.1949-52.

surreply and accompanying expert rebuttal report in opposition to class certification. The district court denied the motion and certified the class. This Court vacated the certification order, holding that the defendants were entitled to "an adequate opportunity to respond" to new evidence raised in the plaintiffs' reply. *Id.* at 774 (quoting *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 296 (5th Cir. 2022)). On remand, the defendants were permitted to file both the surreply and the expert report. *See In re Anadarko Petroleum Corp. Sec. Litig.*, Case No. 4:20-cv-00576, ECF Nos. 97, 110, 245 (S.D. Tex.).

*Anadarko* thus confirms that defendants must be afforded a meaningful opportunity to respond to new expert evidence introduced at the reply stage—particularly where, as here, the reply included a 110-page rebuttal report from Dr. Feinstein. The district court's decision to strike Dr. Stulz's surreply report without analysis or justification deprived Defendants of that opportunity and violated the procedural safeguards this Court has repeatedly emphasized.

The district court compounded this error by refusing to allow Defendants to address the impact of newly alleged "corrective disclosures" introduced in Plaintiffs' Second Supplemented Complaint.

App.1862-74.  Because those new disclosures occurred "*after* the close of the proposed class period," they "cannot be a corrective disclosure sufficient to establish loss causation." *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 2013 WL 4405538, at *10 (S.D.N.Y. Aug. 5, 2013), *aff'd*, 783 F.3d 383 (2d Cir. 2015); *see also Bd. of Trs. of Ft. Lauderdale Gen. Emples. Ret. Sys. v. Oao*, 811 F. Supp. 2d 853, 858 n.2 (S.D.N.Y. 2011) (citing *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005)).[3]  Even if the class period did not need to be extended, the disclosures still bear on price impact, *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 118 (2021), and the availability of classwide damages, *Comcast*, 569 U.S. at 34.  But the district court conducted no analysis of these new disclosures and provided Defendants no opportunity to respond to them.

Finally, the district court erred in denying Defendants' unopposed request for an evidentiary hearing.  "If there is any doubt as to the propriety of a class action, a preliminary evidentiary hearing on maintainability is essential." *Camper v. Calumet Petrochemicals, Inc.*,

---

[3]  Courts in the Fifth Circuit have not squarely addressed whether securities plaintiffs can allege corrective disclosures outside the class period.

584 F.2d 70, 72 (5th Cir. 1978); *see also Merrill v. S. Methodist Univ.*, 806 F.2d 600, 608 (5th Cir. 1986).  This case presented numerous factual disputes—including competing expert opinions on market efficiency and damages—that would have benefited from live testimony and cross-examination.  The district court itself acknowledged that "Defendants' criticisms of Feinstein's report can be 'brought out through vigorous cross-examination.'"  App.1947 (quoting *KB Partners I, L.P. v. Barbier*, 2013 WL 2443217, at *9 (W.D. Tex. June 4, 2013)).  Yet it denied Defendants any opportunity to do so.[4]

Taken together, these procedural errors reflect a failure to meaningfully engage with the factual record and the legal standards governing class certification.  That failure taints the district court's entire decision and independently warrants reversal.

## CONCLUSION

This Court should grant this petition and reverse or vacate the class certification order.  The decision below rests on a fundamentally flawed

---

[4] In the same vein, the district court further erred by striking Defendants' *Daubert* motion and refusing to conduct a full *Daubert* inquiry prior to ruling on class certification. *See Anadarko*, 99 F.4th at 773-74.

application of the fraud-on-the-market doctrine, fails to ensure that damages are tied to Plaintiffs' theory of liability, and is tainted by serious procedural errors.  Review is warranted to correct these errors and to clarify the limits of class certification in securities actions involving novel market dynamics.

DATED:    August 26, 2025            Respectfully submitted,


                                     s/ Gregg Costa
                                     Gregg Costa

                                     GIBSON, DUNN & CRUTCHER LLP
                                     Gregg Costa
                                     gcosta@gibsondunn.com
                                     Lloyd S. Marshall
                                     lmarshall@gibsondunn.com
                                     811 Main St., Suite 3000
                                     Houston, TX 77002
                                     Telephone: (346) 718-6600

                                     Monica K. Loseman
                                     mloseman@gibsondunn.com
                                     Scott Campbell
                                     scampbell@gibsondunn.com
                                     1801 California St.
                                     Denver, CO 80202
                                     Telephone: (303) 298-5700

Brian Richman
brichman@gibsondunn.com
2001 Ross Avenue, Suite 2001
Dallas, TX 75201
Telephone: (314) 698-3100

COUNSEL FOR PETITIONERS
CASSAVA SCIENCES, INC. AND
ERIC J. SCHOEN

BAKER & HOSTETLER LLP

Douglas W. Greene
dgreene@bakerlaw.com
Zachary R. Taylor
ztaylor@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 847-7090

C. Shawn Cleveland
scleveland@bakerlaw.com
2850 N. Harwood St., Suite 1100
Dallas, TX 75201
Telephone: (214) 210-1210

COUNSEL FOR PETITIONERS REMI
BARBIER AND LINDSAY BURNS

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitations of Rules 5(c)(1) and 32(c)(2) of the Federal Rules of Appellate Procedure because it contains 5,159 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 5.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook typeface.

/s/ Gregg Costa
Gregg Costa
*Counsel of Record*

Dated: August 26, 2025

# CERTIFICATE OF SERVICE

I hereby certify that, on August 26, 2025, a true and correct copy of the foregoing petition was served electronically on the following counsel of record for Respondents:

Daniel S. Drosman
Jessica T. Shinnefield
Kevin A. Lavelle
Heather G. Geiger
Jeremy W. Daniels
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
dand@rgrdlaw.com
jshinnefield@rgrdlaw.com
klavelle@rgrdlaw.com
hgeiger@rgrdlaw.com
jdaniels@rgrdlaw.com

Joe Kendall
KENDALL LAW GROUP, PLLC
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: (214) 744-3000
jkendall@kendalllawgroup.com

Charles H. Linehan
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
clinehan@glancylaw.com

s/ Gregg Costa
Gregg Costa
*Counsel of Record*